UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| LAYCELLE TORNEE WHITE, | Case No. 6:16-cv-01071-TC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| KATE BROWN, in her Official Capacity as Governor of the State of Oregon; COLETTE S. PETERS, in her Official Capacity as Director of the Oregon Department of Corrections; MICHAEL WU, in his Official Capacity as Chairperson, Oregon Board of Parole and Post-Prison Supervision; jointly and severally, | |
| Defendants. | |

COFFIN, Magistrate Judge:

      Plaintiff, an inmate at Oregon State Penitentiary, brings this action pursuant to 42 U.S.C. § 1983 and alleges violations of his rights to due process and to be free from cruel and unusual punishment. Plaintiff maintains that defendants' application of Oregon's sentencing and parole

1   - FINDINGS AND RECOMMENDATION

scheme denies him a meaningful opportunity to seek release and results in a de facto sentence of life imprisonment for crimes he committed as a juvenile, contrary to the rulings of the United States Supreme Court in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) and *Miller v. Alabama*, 132 S. Ct. 2455 (2012). Plaintiff seeks declaratory and injunctive relief requiring defendants to provide him with a parole consideration hearing immediately and every two years thereafter.

Defendants move to dismiss plaintiff's claims on grounds that the relief sought implicates the validity of his sentence, the claims are untimely, and plaintiff's non-mandatory, determinate sentence does not violate the holdings of *Montgomery* or *Miller*. For the reasons explained below, defendant's motion should be granted and plaintiff's claims should be dismissed.

## I. BACKGROUND

In 1993, plaintiff and his twin brother broke into the home of Richard and Grace Remy, murdered them, and stole the Remys' personal items and vehicle. Plaintiff and his brother were fifteen years old at the time. Plaintiff was tried as an adult pursuant to a stipulated facts trial and found guilty of one count of aggravated murder and one count of murder. On January 11, 1995, the trial court sentenced plaintiff to an indeterminate sentence of life with the possibility of parole on the aggravated murder count and to a concurrent, determinate sentence of 800 months – without the possibility for parole – on the murder count.

In 1999, the Oregon Board of Parole and Post-Prison Supervision (the Board) held a parole hearing and established a prison term of life for plaintiff's aggravated murder conviction and permitted him to seek parole review after forty years. *See White v. Belleque*, Case No. 6:02-cv-00630-TC, 2010 WL 5625800, at *2 (D. Or. Oct. 21, 2010), *adopted by* 2011 WL 208262 (D. Or. Jan. 21, 2011). Plaintiff challenged the Board's decision. After lengthy habeas proceedings, this Court ruled that plaintiff was entitled to seek review of his parole denial after twenty years,

and, if denied again, the opportunity to seek parole review every two years afterward. *Id.* 2010 WL 5625800, at *12. This Court's decision was limited to plaintiff's conviction and sentence for aggravated murder. *Id.* at *1, n.2.

In October 2012, the Board again conducted a parole hearing to establish plaintiff's release date for his aggravated murder conviction. The Board allegedly applied the "adult" parole matrix and established a prison term of 288 months and a projected release date of January 10, 2019. Pl.'s Compl. at 4-5, 18. However, the Board "denied any jurisdictional capacity to consider releasing plaintiff" from his 800-month determinate sentence imposed for his murder conviction. Pl.'s Compl. at 5.

In 2015, the Board conducted an "exit" interview and ultimately deferred plaintiff's projected release date by ten years, finding that plaintiff could not reasonably be expected to be released in ten years because of the 800-month determinate sentence he was serving for his murder conviction. Pl.'s Compl. at 18. According to plaintiff, the Board relied on Or. Admin. R. 255-062-0016(14), which provides that the Board may defer a release date by up to ten years if: "The inmate is serving a concurrent sentence over which the Board does not have release authority, and which has a release date ten or more years from the projected parole release date on the Board sentence." *See also State ex rel. Engweiler v. Felton*, 350 Or. 592, 598, 260 P.3d 448 (2011) ("criminal defendants subject to guidelines sentencing are not eligible for release on parole").

On June 13, 2016, plaintiff filed this action. Defendants now move for dismissal.

## II. DISCUSSION

In his first and second claims for relief, plaintiff alleges that defendants' failure to provide him with a meaningful opportunity to seek release renders his sentence a de facto life

3   - FINDINGS AND RECOMMENDATION

sentence and violates his rights against cruel and unusual punishment and to due process of law under *Miller* and *Montgomery*. Plaintiff seeks a declaration that his sentence and continued incarceration are unconstitutional and an injunction requiring defendants to provide him with a "meaningful opportunity to obtain release immediately and every two years thereafter." Pl.'s Compl. at 24. Defendants argue that because plaintiff's determinate sentence precludes the opportunity to seek release on parole, he "essentially wants this Court to convert his determinate sentence into an indeterminate one." Defs.' Reply at 3. Defendants therefore maintain that plaintiff's first and second claims necessarily implicate the validity of his determinate sentence and must be dismissed under the *Heck* doctrine. *See Heck v. Humphrey*, 512 U.S. 477 (1994). I agree.[1]

Under *Heck* and numerous other Supreme Court cases, it is well established that "a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (citing cases). More specifically, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

For example, in several cases the Supreme Court found that claims challenging the constitutionality of prison disciplinary proceedings resulting in the deprivation of good-time credits necessarily implicated the duration of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *see also Edwards v. Balisok*, 520 U.S. 641 (1997); *Wolff v. McDonnell*, 418 U.S.

---

[1] Defendants also argue that plaintiff's first and second claims are untimely and fail to state a claim. *See* Defs.' Motion at 8-12. Given my determination that the claims are barred by *Heck* and its progeny, I need not and do not address these arguments.

4 - FINDINGS AND RECOMMENDATION

539 (1974). The Court explained that claims demanding the restoration of good-time credits would require immediate release or shorter terms of confinement and thus remained "within the core of habeas corpus in attacking the very duration of [] physical confinement itself." *Preiser,* 411 at 487-88.[2] Likewise, in *Heck,* the Supreme Court ruled that tort claims alleging unconstitutional conduct leading to a criminal conviction invariably challenged the validity of the conviction and could not be brought under § 1983. *Heck,* 512 U.S. at 487.

In contrast, in *Wilkinson,* the Supreme Court held that claims challenging the constitutionality of parole proceedings and seeking renewed parole hearings did not "necessarily imply the invalidity" of the convictions or sentences at issue. 544 U.S. at 82 (citation omitted). The Court reasoned that granting the relief sought "does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application," or it "means at most a new parole hearing at which" parole officials "may, in their discretion, decline to shorten [the] prison term." *Id.*

Taken together, these cases hold that a prisoner cannot bring an action under § 1983 if granting the relief sought would establish the unconstitutionality of a conviction or sentence or otherwise reduce the length of imprisonment. Instead, the prisoner "must seek federal habeas corpus relief (or appropriate state relief)." *Id.* at 78.

Plaintiff argues that his claims, like those alleged in *Wilkinson,* challenge only the absence of parole hearings rather than his conviction or sentence and do not require "his immediate or speedier release into the community." *Id.* Thus, plaintiff argues that the relief he seeks is outside the "core of habeas corpus" and appropriately pursued in a § 1983 action.

---

[2] The Supreme Court also noted that prisoners were not necessarily barred from seeking a declaration that prison disciplinary procedures were invalid or a "proper injunction enjoining the prospective enforcement of invalid prison regulations." *Wolff,* 418 U.S. at 555.

5   - FINDINGS AND RECOMMENDATION

*Preiser,* 411 U.S. at 487. I find that plaintiff's claims are distinguishable from those in *Wilkinson* and cannot be raised in this § 1983 action.

Prior to 1989, Oregon used an indeterminate sentencing scheme and a parole matrix system to establish "the actual term of imprisonment for most felony offenders." *Engweiler,* 350 Or. at 598, 260 P.3d 448. Under this scheme, the Board established the duration of imprisonment and the release date of a prisoner sentenced to an indeterminate term. *Id.* at 607, 260 P.3d 448. In 1989, the Oregon Legislature replaced the indeterminate sentencing scheme with a "guidelines" scheme requiring trial judges to impose determinate, presumptive sentences according to relevant guildelines factors. *Id.* at 598, 260 P.3d 448. Nonetheless, juvenile offenders who committed aggravated murder between 1989 and 1995 continued to receive indeterminate life sentences, and the Oregon Supreme Court has ruled that such juvenile offenders are entitled to the possibility of parole. *Id.* at 608, 260 P.3d 448; *see also Engweiler v. Bd. of Parole and Post-Prison Supervision,* 343 Or. 536, 545, 175 P.3d 408 (2007).[3]

Plaintiff was one of those juveniles who received an indeterminate life sentence for his aggravated murder conviction and is therefore eligible to seek parole. The Board presumably recognized this fact in 2012 when it held a parole hearing and established a new prison term of 288 months with a projected release date of January 2019 for his aggravated murder conviction.

---

[3] Though juveniles convicted of aggravated murder were entitled to the possibility of parole after 1989, the Board had no rules governing parole decisions for such offenders. "In 1999, to address that situation, the board promulgated a set of administrative rules to be applied to determine whether and when to grant parole release to juvenile aggravated murderers." *Engweiler,* 350 Or. at 599, 260 P.3d 448 (citation omitted); *see also White,* 2010 WL 5625800, at *2. In 1999, the Board established plaintiff's term of life imprisonment with the possibility of parole in 40 years pursuant to these rules, leading to this Court's opinion in *White.* In 2011, the Oregon Supreme Court subsequently declared such rules invalid, and they are not at issue in this case. *Engweiler,* 350 Or. at 630-31, 260 P.3d 448.

6 - FINDINGS AND RECOMMENDATION

However, plaintiff also received an 800-month determinate, guidelines sentence for his murder conviction. Under Oregon's guidelines sentencing scheme, offenders who receive determinate sentences are not eligible for release on parole, and the Board simply has no authority to offer plaintiff the opportunity for parole before he serves his determinate sentence. *Engweiler*, 343 Or. at 541, 175 P.3d 408 ("The sentencing guidelines system thus eliminated any kind of release on parole for persons subject to its provisions."). In other words, plaintiff's determinate, guidelines sentence bars the precise relief he seeks: the opportunity for immediate and biennial parole hearings. To eliminate that bar and order the relief plaintiff seeks, the Court would need to find plaintiff's determinate sentence invalid or unconstitutional. Consequently, plaintiff's claims ultimately challenge the 800-month determinate sentence imposed by the trial court, not the Board's failure to provide a parole hearing.

I recognize that plaintiff does not explicitly seek an immediate or earlier release from confinement and instead challenges the absence of a "procedural mechanism" that would provide the opportunity for parole. Pl.'s Response at 6. In that respect, plaintiff's claims are akin to those in *Wilkinson*, in that he demands a process rather than a particular result. *Wilkinson*, 544 U.S. at 82. Regardless, the fact remains that the nature of plaintiff's determinate, guildelines sentence renders him ineligible for parole. Unlike the circumstances in *Wilkinson*, this Court cannot order defendants to provide an opportunity for parole without invalidating plaintiff's determinate sentence. *See Edwards*, 520 U.S. at 646 (explaining that the "procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits"). Indeed, in addition to an injunction requiring parole hearings, plaintiff seeks a declaration that "the *de facto* life sentence that results from Oregon's bifurcated sentencing scheme...violates the Eighth and Fourteenth Amendments to the United States Constitution."

7   - FINDINGS AND RECOMMENDATION

Pl.'s Compl. at 24. Accordingly, plaintiff's first and second claims necessarily implicate the validity of his 800-month determinate sentence and cannot be raised under § 1983.

In his third claim for relief, plaintiff alleges that the Board's application of "adult" parole procedures in establishing a release date for his aggravated murder conviction likewise violates his right to due process. Plaintiff contends that the Board's procedures fail to "recognize the difference in moral culpability between adults and juveniles" and "treat youth as an aggravating factor instead of as a mitigating factor." Pl.'s Compl. at 23-24. Defendants argue that plaintiff lacks standing to pursue this claim, because the rules applied by the Board have no practical effect on his sentence in light of his concurrent, 800-month determinate sentence. Defs.' Motion at 13-14. Again, I agree.

"Standing is an essential component of the case or controversy requirement of Article III, section 2 of the United States Constitution." *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003). "The standing doctrine, like other Article III doctrines concerning justiciability, ensures that a plaintiff's claims arise in a 'concrete factual context' appropriate to judicial resolution." *Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007) (citation omitted). To establish standing, a plaintiff must show: 1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; 2) "the injury is fairly traceable to the challenged action of the defendant"; and 3) the injury is likely to be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, plaintiff does not and cannot show injury in fact arising from the Board's application of "adult" procedures when establishing the release date for his aggravated murder conviction. Regardless of the parole procedures the Board employed, plaintiff is not eligible for

parole due to the 800-month determinate sentence imposed for his murder conviction. The Board's parole procedures simply have no effect on plaintiff's actual eligibility for release at this time or in the near future. Thus, plaintiff has not suffered an actual and imminent injury that is fairly traceable to the Board's application of adult parole procedures.

## CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss (ECF No. 16) should be granted, and plaintiff's claims should be dismissed. This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this __5__ day of May, 2017.

Thomas Coffin
United States Magistrate Judge